Showalter, Plaintiff in error, vs. The State, Defendant in error.

*February 2—February 20, 1912.*

*Rape: Nonconsent: Degree of resistance: Evidence: Leading questions: Instructions to jury: Appeal: Harmless errors.*

1. Evidence on a trial for rape *held* sufficiently to show that the complaining witness resisted to the utmost and made every reasonable effort in her power to prevent the violation of her person.
2. Permitting the district attorney to propound leading questions to the complaining witness was not prejudicial error in this case, no objection thereto having been made by defendant's counsel and the facts covered by such questions having also been testified to by such witness in response to questions not leading in form.
3. Instructions as to the degree of resistance required to show nonconsent: "There can be no rape of a female where there is consent, no matter how reluctantly it be given. To constitute rape the connection must be against her will, and there must be the utmost reluctance and resistance on her part, or her will must be overcome by fear and terror so extreme as to preclude resistance,"—state the law correctly.

Error to review a judgment of the circuit court for Grant county: George Clementson, Circuit Judge. *Affirmed.*

The plaintiff in error, hereafter referred to as the defendant, was convicted on October 20, 1910, on an information charging him with having committed the crime of rape upon the person of one Mary Fraizer, the complaining witness, on the 24th day of September, 1910.

The complaining witness testified to the following effect: She was a widow sixty-five years of age at the time of the alleged assault. For a little more than a year ending in April, 1910, the defendant had boarded and during the cold weather roomed at her home. He was a horse trainer, and during the warm weather slept on the fair grounds, which were close to her home. On the night of September 23, 1910,

she was alone.    It was a rainy and stormy night.    At about
11 o'clock she was awakened by some one walking around the
house and trying the doors and windows.    She went to a win-
dow and asked who was there and the defendant gave his
name, asked if she was alone, and said he wanted to get in.
He was told he could not get into the house that night.    The
defendant persisted in trying to get in at the doors and win-
dows and the complaining witness became frightened, went to
different windows of the house, raised them, and called for help
to different neighbors.    The defendant then threatened to
shoot her through the window if she screamed again.    Pres-
ently the defendant went around the house and opened the
cellar door and went down into the cellar way.    While he was
down in the cellar way trying the door the complaining wit-
ness had put on some clothes and thrown a shawl over her
head.    She opened the front door and went out, locking the
door after her.    She ran over to the kitchen door of a neigh-
bor's house, rapped upon it and called the name of the neigh-
bor, but no one came to let her in.    While she was at the door
she heard some one walking or running, and on looking
around saw the defendant almost upon her.    She ran scream-
ing around the house and was caught by him in front of the
house.    She was held tightly with one arm and hand while he
placed the other hand over her mouth and nose, the thumb
being forced into her mouth under the plate of her false
teeth.    In the struggle her eye glasses were bent out of shape
and knocked off.    The defendant then dragged and pulled her
over onto the porch of her house, took the key from her, opened
the door, pushed and dragged her into the house, locked the
door, and put the key in his pocket.    The complainant testi-
fied that she screamed as long as she was able and that this
was the reason the defendant put his hand over her mouth.
After they were in the house the defendant held her fast
while they went into the back part of the house.    She suf-
fered from thirst and the defendant permitted her to get a

drink of water.    He then grasped her and pulled and dragged
her up stairs and into a room, locked the door, and proceeded
to take off his clothes.    She observed him removing his cloth-
ing and removed the wet shawl she had worn out in the rain.
She testified that she was then afraid to scream for fear that
she would not be allowed to live.    He then took off her shoes
and stockings, removed her skirts, and threw her upon the
bed.    She testified that she pushed him away as long as she
had strength and that she was exhausted and almost terrorized
by fear.    He then tried to have intercourse with her, but
failed because she was not in a suitable position.    He then
took her by the feet and dragged her into position and then ac-
complished the act of sexual intercourse.    After the act he
allowed her to get up.    She got some clothes, crawled down
stairs and dressed herself, went into the cellar way, locked
the door between it and the dining room, and stayed there
from 2 o'clock until nearly 6 in the morning.    She testified
that she was afraid to go out for fear the defendant would
hear her, follow and overtake her, misuse her again and prob-
ably kill her, and she was afraid to go out when there was no-
body moving on the streets.    Shortly before 6 she went to the
house of the neighbor at whose door she had knocked during
the night, and on being admitted told him what had occurred.
While she was at this house the defendant left her house and
she shortly went home.    About 11 o'clock she was driven
down to a justice's office and made the complaint.    She was
confined to her bed for two days.    She says she slept very
little for four nights thereafter.    The skin on her nose was
broken, the membrane of the mouth was abrased and broken by
the defendant's thumb, there was an abrasion on her arm and
a large bruise on the calf of her leg.

There was evidence that the cries of the complainant were
heard by one person from an eighth to a quarter of a mile
away and by another person three blocks away.    The neigh-
bor to whose home she went in the morning, another neighbor
who came in later and who took her down to the justice's of-

fice, and the justice, all testified that she was very nervous and excited. Her nearest neighbor testified that when she came to his house in the morning she looked like a crazy woman and that he hesitated to let her in. She was permitted to testify as to what she stated to some of these persons. A physician testified to the bruises and to the very nervous state of the complainant.

The defendant was arrested on October 7, 1910, in another county, where he had been traced by the officers.

The defendant prosecutes this writ to review the trial wherein he was found guilty as charged in the information and sentenced to the state prison for the term of fourteen years.

For the plaintiff in error the cause was submitted on the brief of *John Courtney.*

For the defendant in error there was a brief by the *Attorney General, Russell Jackson,* deputy attorney general, and *George B. Clementson,* district attorney, and oral argument by *Mr. Jackson.*

SIEBECKER, J. The contention is made that the evidence does not sustain the verdict finding the defendant guilty of the crime charged. The claim is that the evidence fails to establish that the defendant had sexual intercourse with the complaining witness by force and against her will. The foregoing statement contains a statement of the facts which her evidence tends to prove and which the other facts and circumstances of the case corroborate in material and essential points. The claim that portions of her evidence show that she did not employ all available means at her command to repel defendant's attack and to prevent him from ravishing her person is based on parts of her evidence disassociated from other facts testified to by her which explain those statements. They must be read together. When considered as a whole, the evidence furnishes abundant proof to warrant the jury in concluding that she resisted him to the utmost and at no time vol-

untarily submitted to the violation of her person. We are cited particularly to the statements she made that after she had been assaulted and dragged to her bedroom she ceased striking, kicking, and making other like resistance to his assault. It is manifest from her evidence that her physical powers had then been exhausted by reason of the prolonged struggle, to the point of incapacitating her to effectually resist his attack, and that she was then so terrified in mind as to be well nigh incapable of continuing her resistance to repel him. The evidence amply sustains the conclusion of the jury. It shows the utmost reluctance on her part and that she made every reasonable effort within her power to prevent him from accomplishing his purpose. We consider that the evidence fully sustains the verdict.

It is claimed that the court erred in permitting the district attorney to conduct the examination of the state witnesses in an illegal and highly prejudicial manner. Defendant was represented by counsel. No objection was taken on the trial to the procedure now complained of, and we find nothing in the record justifying any claim that counsel representing the defendant at the trial was derelict in his duty in not interposing objection to leading questions now brought to our attention. True, as appears, the prosecuting attorney propounded leading questions to the complaining witness concerning matters as to which she exhibited no reluctance to testify and which she was able to state to the jury by narrating the facts in the manner witnesses usually narrate them without suggestion from court or counsel. This, however, does not in itself show that the defendant's best interests on the trial were not subserved by omitting to object to this course of procedure. The manner of conducting trials is so subtle in its effects that those in charge of them are far better able to determine whether the rights of parties are being prejudiced than persons not participating, and we doubt not that the defendant's counsel had good reasons for permitting the examinations to proceed as they did, though the questions propounded were

technically objectionable as leading.    It is also well settled
that a trial court may in its discretion permit such a course of
procedure if it promotes the ends of justice and does not
thereby deprive a defendant of any of his legal rights.    An
examination of the evidence discloses also that the facts em-
braced in the leading questions now complained of were tes-
tified to by the complaining witness in response to inquiries
not leading in form.    Under the circumstances we discover
no prejudicial results to defendant's rights in this respect.
The implication of these complaints respecting the conduct of
the court and the defendant's counsel on the trial has called
for these observations though no exceptions respecting them
are preserved in the record.

It is further contended that the instructions of the court in
submitting the case to the jury were prejudicially erroneous
as regards the presumption of innocence, as to informing them
of the penalty prescribed for an offense like this, the degree
of resistance required by the female to show nonconsent, and
as to a portion of the instructions assuming essential facts at
issue as established by the evidence.    These exceptions to the
charge are not well taken.    The court properly informed the
jury of all the essential ingredients of the crime charged, and
instructed them that in law the defendant was presumed to be
innocent and that they would not be warranted in finding him
guilty unless guilt were proven beyond a reasonable doubt.
As to the degree of resistance required of the party thus as-
saulted the jury were told that:

"There can be no rape of a female where there is consent,
no matter how reluctantly it be given.    To constitute rape the
connection must be against her will, and there must be the
utmost reluctance and resistance on her part, or her will must
be overcome by fear and terror so extreme as to preclude re-
sistance."

The instructions on the foregoing features of the case, as
well as those pertaining to the presumption of innocence and
the burden of proof, state the law correctly.    They were

couched in plain and clear language and manifestly informed the jury of the law and of their duty in determining the issues submitted. Nor do we find that the court improperly assumed as proven any controverted facts which were for determination by the jury.

The record sustains the verdict and no reversible errors intervened.

*By the Court.*—Judgment affirmed.